UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

United States District Court
Southern District of Texas
FILED

JAN 5 2022

Nathan Ochsner, Clerk

| | | |
|---|---|---|
| UNTED STATES OF AMERICA | § § § | |
| v. | § | CRIMINAL NO. M-22-0001 |
| ARMIN GARZA | § § § | |

## CRIMINAL INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

### Introduction

At all times material to this Criminal Information:

1. Defendant **ARMIN GARZA ("GARZA")** is a La Joya Independent School District (LJISD) Trustee. As an elected trustee **GARZA** was sworn to faithfully execute the duties of his office and to preserve, protect, and defend the Constitution and laws of the United States and the State of Texas. Texas law mandates that the Board of Trustees contribute to the operation of the district in a manner consistent with applicable laws and regulations.

2. Company A is an engineering company in Hidalgo County, Texas managed by Person A.

3. Company B is a business based in Hidalgo County, Texas managed by Person B.

4. Company C is a business based in Hidalgo County, Texas managed by Person C.

5. Company D is a business employing Person D.

6. Persons E, F, and G are elected officials for Governmental Entity A. Person E, F, and G were employed by LJISD.

7. Person H, I, and J are elected officials for Governmental Entity B. Person H is employed by LJISD.

1

8. Person K was an elected official for Governmental Entity C.

9. Person L is a businessman in Hidalgo County, Texas and relative of Persons J and Person K.

10. Company E and Company F are business entities in Hidalgo County, Texas. Company E and Company F are managed by Person M.

11. Governmental Entity D employs Persons B and M.

12. Governmental Entity A, B, C, D, and LJISD each received over $10,000 in federal funding during each and every year relevant to this Criminal Information.

13. WhatsApp, LLC is a communication platform that allows users to send text, photo, video, or audio messages to one another through an application that can be run on a cellular phone or computer. The communication platform also permits users to conduct audio and video calls with one another. WhatsApp, LLC does not maintain servers in Texas and all communications referenced herein were transmitted in interstate commerce.

## THE CONSPIRACY

14. Beginning by at least May 29, 2017 and continuing through at least until February 4, 2021, in the McAllen Division of the Southern District of Texas, defendant

**ARMIN GARZA**

did knowingly combine, conspire, confederate, and agree with other persons known and unknown, to commit an offense against the United States, as follows:

(a) While an agent of a local government agency which received more than $10,000 from a federal assistance program during a continuous one-year period, to knowingly and corruptly solicit, accept, and agree to accept, things of value from a person, intending to be influenced and rewarded in connection with any business, transaction, and series

of transactions of such agency involving anything of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(i).

(b) To knowingly and intentionally devise and intend to devise a scheme and artifice to defraud including the deprivation of the intangible right of honest services of other persons and in furtherance of the scheme and artifice to defraud, used and caused to be transmitted by means of wire communications in interstate or foreign commerce, any writings, sings, signals, pictures, or sounds for the purpose of executing such scheme or artifice in violation of Title 18, United States Code, Sections 1343 and 1346;

(c) To knowingly obstruct, delay, and affect commerce by means of extortion, in that they obtained property that was not due to them or their office and to which they nor their office was entitled, all induced under color of official right, in violation of Title 18, United States Code, Section 1951; and

(d) To knowingly use and cause the use of a facility in interstate commerce, with the intent to otherwise promote, manage, establish, carry on and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that being a bribery of a public official in violation of the laws of the State of Texas, Penal Code § 36.02(a)(1) and (3), and thereafter performed and attempted to perform acts in furtherance of the unlawful activity in violation of Title 18, United States Code, Section 1952.

## MANNER AND MEANS

15. The manner and means of the conspiracy included, but were not limited to, the following:

A. It was part of the conspiracy that **GARZA** met and discussed an energy savings contract to be proposed to LJISD by Company D with Person D prior to May 29, 2017.

B. It was a part of the conspiracy that **GARZA** would conspire with others to launder and award compensation or other benefits to **GARZA** and other public officials in Hidalgo County, Texas in exchange for their respective official votes, motions, and support in favor of energy savings contracts proposed by Company D.

C. It was further part of the conspiracy that Person D would facilitate the selection of subcontractors at the direction of **GARZA** or other co-conspirators to perform portions of the scope of work awarded or to be awarded in the energy savings contract. Several subcontractors selected, such as Company B and Company C, agreed to route compensation to **GARZA** and other co-conspirators as a condition of their employment. The inflated prices on governmental contracts awarded to Company D permitted the awarding of excessive subcontracts and permitted subcontractors to make kickback and bribe payments to **GARZA** and other co-conspirators.

D. It was further part of the conspiracy that Company A was hired in connection with energy savings contracts awarded to Company D. Person A was instructed by co-conspirators to issue kickback and bribe payments in exchange for the hiring of Company A.

E. It was further part of the conspiracy that **GARZA** exerted influence over the employment of other co-conspirators, including Persons E-H, who were elected officials at other governmental entities. The influence was exerted to promote the

4

awarding of contracts to Company D at said governmental entities. As part of the exercise of his influence, **GARZA** supported promotions or awarding of stipends to Persons E-H in exchange for their official votes or support of Company D's energy savings projects at other governmental entities.

F. It was a further part of the conspiracy, that **GARZA** did agree tacitly and implicitly, to deprive the taxpayers and residents of the LJISD and other taxpayers in Hidalgo County of the intangible right of honest services related to the contracting processes for energy savings contracts, in breach of: the oath of office taken by **GARZA**; and Texas criminal law relating to gifts to public servants, bribery, and procedures for governmental contracting;

G. It was a further part of the conspiracy that **GARZA** and other co-conspirators did use and cause the use of the facilities in interstate commerce, including cellular phones and computers, to communicate and promote the bribery scheme and as part of the scheme to provide benefits to **GARZA.**

H. It was a further part of the conspiracy that prior to and following the receipt of bribes and kickback payments facilitated by Person D, that **GARZA** did make official motions and votes in meetings of the LJISD Board of Trustees, in an effort to cause the awarding of energy savings contracts to Company D by LJISD and other governmental entities in Hidalgo County, Texas.

## OVERT ACTS

16. In furtherance of the conspiracy and in order to accomplish its objectives, the following overt acts, were committed in the McAllen Division of the Southern District of Texas and elsewhere:

17. On or about May 29, 2017, **GARZA** made a motion as an LJISD board trustee in support of granting an energy savings contract to Company D, which was ultimately granted to Company D.

18. During 2017 and during the relevant period, Person E, F, and G each received promotions and/or stipends as employees at LJISD. **GARZA** supported said promotions and stipend in attempt to secure their support of future projects **GARZA** supported, including contracts to be awarded to Company D.

19. On or about May 4, 2018, Company A issued an invoice seeking payment in the amount of $223,237.68 in relation to a contract awarded to Company D. Company A subsequently issued a wire transfer to Company B's bank account in the amount of $163,707.63 on May 16, 2018. Company B subsequently issued a check to Company E on May 16, 2018 in the amount of $63,250.00. Company E subsequently issued a check to **GARZA** in the amount of $50,000.00 on May 17, 2018. **GARZA** did not perform any work for Companies A, B, or E, but the transactions were layered to conceal and disguise the bribe and kickback payments to **GARZA**.

20. On or about July 11, 2018, Company C received payment in the amount of $168,141.57 for work allegedly performed on behalf of a subcontractor hired as part of Company D's scope of work at LJISD. After receiving payment, Company C issued a check to Company F in the amount of $74,070.00 on July 16, 2018. Company E subsequently issued a check in the amount of $18,000.00 to **GARZA** on July 19, 2018. Company E then issued a second check in the amount of $24,200.00 to **GARZA's** relative on July 20, 2018 at **GARZA's** direction. **GARZA** did not perform any work for Companies C, E, or F, but the transactions were layered to conceal the bribe and kickback payments to Garza.

21. From on or about September 28, 2017 through August 16, 2018, Company E issued five additional checks to **GARZA** totaling $142,300 as bribes and kickback payments for **GARZA's** influence over Persons E-J that were elected officials at governmental entities that had awarded contracts to Company D.

22. On or about March 19, 2018, Company D was awarded a contract at Governmental Entity A. Persons E, F, and G voted in support of the contract and hired Company A to serve as the Governmental Entity A's representative for the contract.

23. By at least September 20, 2019, **GARZA** and other co-conspirators, including Person B, began communications in a WhatsApp conversation thread dubbed "Cartel City???" that discussed various topics, including their schemes, the need to be aware of law enforcement, and Company D's current and prospective projects at other governmental entities in Hidalgo County.

24. By at least September 30, 2019, Person B, Person G, and other co-conspirators began communications in a WhatsApp conversation thread dubbed "New City Admin" that discussed various topics including projects with Company D, extorting companies for government approvals, referring to themselves as a "cartel," and setting up meetings with **GARZA** and Person G to place LJISD employees "on check" ostensibly to secure votes and the election of certain candidates in 2020. The election of the proposed candidates were to be favorable candidates for Company D's prospects of receiving and continuing to receive energy savings contracts at various governmental entities.

25. By at least April 14, 2020, Person B, Person D, and other co-conspirators began communications in a WhatsApp text messaging thread dubbed "Chapo Enterprises" that discussed projects being undertaken by Company D including the inflating of prices and the timing and routing of payments from Company D to various subcontractors. The communications also

7

discuss Person H's stance towards Company D, a possible official vote on a proposed contract with Company D at a governmental entity in Hidalgo County, and efforts to award an individual a subcontract in order to gain Person H's official vote. The communications also discussed the awarding of the contract to Company D by Governmental Entity B.

26. On or about June 22, 2020, Company D was awarded a Guaranteed Energy Savings Performance Agreement by Governmental Entity B after Persons H, I, and J voted in favor of the agreement over the objection of Governmental Entity B's City Manager.

27. By at least October 6, 2020, Person B, Person H, and Person K began communications in a WhatsApp text messaging thread dubbed "The 3 Wizards" that discussed various topics including a local election, a prospective contract for Company D, the subsequent awarding of a contract for Company D, the employment of Person H at LJISD, a possible judicial appointment for Person K in exchange for official political support, and Person B's conversations with **GARZA** "cause [Person B] needs **[GARZA's]** vote in the ISD for work." Person K had previously cast an official vote in an attempt to award Company D an energy savings contract with Governmental Entity C.

28. During the relevant period, **GARZA** attempted to secure a promotion for Person H at LJISD. **GARZA,** Person B, Person H, and other co-conspirators communicated with one another via WhatsApp messages regarding said attempts during the relevant period. The attempts to secure said promotions were to award Person H for Person H's vote in favor of a contract to be awarded to Company D by Governmental Entity B.

29. During the relevant period, Person J executed a contract with Governmental Entity D for "Consultant Professional Services as a COVID-19 Specialist" purportedly effective on

October 1, 2020 in the amount of $3,000.00 per month from October 1, 2020 until September 30, 2023.

30. During the relevant period and during January of 2021, Person B would also communicate with co-conspirators by telephone in the presence of **GARZA,** including providing instructions to co-conspirators regarding motions and votes to be made by Person H and Person I relating to contracts being proposed by Company D to Governmental Entity B.

31. During the relevant period, **GARZA** and Person B also met with Person L and discussed Person H, I, and J's support towards voting to award Company D a contract from Governmental Entity B and an exchange of a business contract for Person L and/or his business entity if said contract was officially awarded to Company D through said votes.

32. On or about January 18, 2021, Persons H, I, and J cast official votes on behalf of Governmental Entity B to finalize a contract with Company D.

33. During the relevant period, Person B and **GARZA** also communicated with one another by cellular phone and through WhatsApp messages regarding Company D's work progress and Company D's payments or payment delays to subcontractors.

34. All in violation of Title 18, United States Code Section 371.

## NOTICE OF FORFEITURE

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code Section 981(a)(1)(C), the United States gives notice to defendant,

### ARMIN GARZA

that in the event of conviction, the United States intends to seek forfeiture of all property, real or personal, constituting, or derived from, any proceeds the person obtained directly or indirectly, as a result of such violation.

The property subject to forfeiture for charge in the Criminal Information includes, but is not limited to, the following property: at least $234,500.00 in United States currency.

## Money Judgment

Defendant is notified that upon conviction, a monetary judgment may be imposed equal to the total value of the property subject to forfeiture.

## Substitute Assets

Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c).

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

_____
ASSISTANT UNITED STATES ATTORNEY